UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICHARD DEWAYNE HUNT,                    No. 2:07-CV-0461-FVS

                    Petitioner,

                                         ORDER DENYING PETITION FOR
          v.                             WRIT OF HABEAS CORPUS

CLAUDE FINN, et al.,

                    Respondents.

---

**THIS MATTER** comes before the Court on Petitioner's Petition For Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Ct. Rec. 1). Petitioner is proceeding pro se.  Respondent is represented by Amy Daniel, a Deputy Attorney General for the State of California.

**BACKGROUND**

At the time his petition was filed, Petitioner was in the custody of the Deuel Vocational Institution in Tracy, California, pursuant to his December 10, 1990, conviction in Trinity County Superior Court for Second Degree Murder.  (Ct. Rec. 1).  Petitioner is currently serving a sentence of 15-years-to-life with the possibility of parole.  He has not been found suitable for parole.  Petitioner does not challenge the validity of his conviction or sentence but instead challenges the September 22, 2005, denial of parole by the Board of Parole Hearings of the State of California (the "BPH").  (Ct. Rec. 1).  Petitioner also requests that the Court take judicial notice of a Santa Clara County Superior Court Order entered in an unrelated state habeas case. (Ct. Rec. 11).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 1

## I.  Factual History

On April 1, 1987, Petitioner began participating in a marijuana-growing operation in Trinity County in exchange for ten percent of the profits from the crop. (Ct. Rec. 1, Exh. A at 11-12).  On June 22, 1987, Petitioner was checking marijuana gardens with another ranch worker, Carl Rogers, when they discovered that an underground water tank was empty. (Ct. Rec. 1, Exh. A at 12).  Rogers became irate and ordered Petitioner to fix the waterline and finish the work in the garden. (*Id.*)  Petitioner was afraid of Rogers, who was always armed with a .30 caliber revolver. (*Id.*)  After working on the waterline and garden, Petitioner returned to the house due to the heat. (*Id.*)  Inside the house, Petitioner told a witness that he thought Rogers was going to physically assault him for not finishing his work in the garden. (*Id*. at 12-13).  Petitioner then armed himself with a .12 gauge shotgun and loaded it with five shells. (*Id*. at 13).  When Rogers returned to the house, Petitioner confronted him. (*Id.*)  The two men began cursing at each other. (*Id.*)  Without warning, Petitioner shot at Rogers, who sought shelter behind a pickup truck. (*Id*. at 13).  A shootout ensued. (*Id.*)  When Petitioner ran out of ammunition, he heard Rogers yell either "you got me, it's over," or "I'll give up, you got me." (*Id.*)  Petitioner entered the house, reloaded his shotgun, and returned to the truck where he observed Rogers lying face down with his gun in his hand. (*Id.*)  Petitioner shot Rogers again at point-blank range. (*Id.*)  Petitioner then dragged the body behind the house and buried it on the property the next day. (*Id*. at 14).

## II.   Procedural History

Petitioner pled guilty to second degree murder in Trinity County Superior Court on December 10, 1990, and began serving his sentence of 15-years-to-life with the possibility of parole on February 1, 1991. Petitioner has thus been incarcerated for the past 19 years.  His minimum eligible parole date was November 4, 2000.  (Ct. Rec. 1, Exh. A).

The parole denial which is the subject of this petition took place after a parole hearing held on September 22, 2005.  After the September 22, 2005 denial, Petitioner filed petitions for a writ of habeas corpus with the Trinity County Superior Court, the California Court of Appeal, Third Appellate District, and the California Supreme Court, all of which were denied.  (Ct. Rec. 8, Exh. 4-6).

On March 9, 2007, Petitioner filed the instant petition for writ of habeas corpus in this Court.  Petitioner contends the BPH violated his due process rights by denying him parole on September 22, 2005. (Ct. Rec. 1).  Respondent filed a response to the petition on June 8, 2007.  (Ct. Rec. 8).  Petitioner filed a traverse to the response on June 18, 2007.  (Ct. Rec. 10).

Petitioner's petition (Ct. Rec. 1) is now before the Court.

**DISCUSSION**

## I.   Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as

determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Clearly established federal law" consists of "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Anderson v. Terhune*, 516 F.3d 781, 798 (9th Cir. 2008) (citing *Lockyer v. Andrade*, 538 U.S. 63, 70-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).  A decision is "contrary to" clearly established federal law in two circumstances. First, a state court decision is contrary to clearly established federal law when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405, 120 S.Ct. at 1519, 146 L.Ed.2d at 425.  Second, a state court decision is "contrary to" clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 412-413, 120 S.Ct. at 1523, 146 L.Ed.2d at 430.  A state court unreasonably applies clearly established federal law when it applies the law in a manner that is "objectively unreasonable." *Id.* at 409.  "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 71.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 4

In examining whether state courts reached a decision that was contrary to federal law or whether the state courts unreasonably applied such law, the Court should look to the last reasoned state court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) *cert*. dismissed, 538 U.S. 919, 123 S.Ct. 1571, 155 L.Ed.2d 308 (2003). Where no reasoning is given in either the state court of appeals or the state supreme court, Ninth Circuit Courts must determine whether a state court's decision was objectively unreasonable based on an independent review of the record. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (quoting *Delgado v. Lewis*, 223 F.3d 976, 981-982 (9th Cir. 2000). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Id.*

Here, the last reasoned decision from a California state court is the decision of the Trinity County Superior Court. (Ct. Rec. 8, Exh. 4). Therefore, this Court shall examine the superior court's decision to determine whether there existed a contrary or unreasonable application of federal law at the state level with regard to Petitioner's claims.

**II.  Challenge to Parole Denial**

Under the Fifth and Fourteenth Amendments to the United States Constitution, the government is prohibited from depriving an inmate of life, liberty or property without the due process of law.  U.S. Const. amends. V, XIV.  A prisoner's due process claim must be analyzed in two steps:  the first asks whether the state has interfered with a

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 5

constitutionally protected liberty or property interest of the prisoner, and the second asks whether the procedures accompanying that interference were constitutionally sufficient. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

**A.  Liberty Interest in Parole**

Respondent contends that California inmates do not have a federally protected liberty interest in parole and Petitioner thus is not able to state a claim for federal habeas relief.  (Ct. Rec. 8 at 7-8).  The Court does not agree.

The Supreme Court has determined that although there is no constitutional right to be conditionally released on parole, if a state's statutory scheme employs mandatory language that creates a presumption that parole release will be granted if certain designated findings are made, the statute gives rise to a constitutional liberty interest. *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369, 377-378 (1987).

California statutes and regulations afford a prisoner serving an indeterminate life sentence an expectation of parole unless, in the judgment of the parole authority, he "will pose an unreasonable risk of danger to society if released from prison."  Title 15 Cal. Code Regs., § 2402(a).  The Ninth Circuit has held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly established' framework of *Greenholtz* and *Allen*" to California's parole scheme).  The Ninth Circuit also held in

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 6

*Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007), that California Penal Code § 3041 vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."  This "liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  California's parole scheme thus gives rise to a cognizable liberty interest in release on parole. *Sass*, 461 F.3d at 1128.

Consequently, contrary to Respondent's argument, the BPH's denial of parole on September 22, 2005, interfered with Petitioner's constitutionally protected liberty interest.

**B.  "Some Evidence"**

The U.S. Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not supported by "'some evidence in the record,' or is 'otherwise arbitrary.'"  *Irons*, 505 F.3d at 851 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768 (1985) (holding the "some evidence" standard applies in prison disciplinary proceedings)).  The "some evidence" standard requires this Court to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.  Although *Hill* involved the accumulation of good time credits rather than release on parole, later cases have held

that the same constitutional principles apply in the parole context because both situations directly affect the duration of the prison term. *See Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-1129; *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-456). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

In order to determine whether "some evidence" supported the BPH's decision with respect to Petitioner, the Court must consider the California statutes and regulations that govern the BPH's decision-making. *See Biggs*, 334 F.3d at 915. Under California law, the BPH must set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b). The overriding concern in

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 8

determining parole suitability is public safety and the focus is on the inmate's current dangerousness. *In re Dannenberg*, 34 Cal.4th 1061, 1086, 23 Cal.Rptr.3d 417, 104 P.3d 783, *cert. denied*, 546 U.S. 844, 126 S.Ct. 92 (2005).

The BPH has promulgated regulations setting forth the guidelines it must follow when determining parole suitability. *See* Cal. Code. Regs., tit. 15 § 2402(c) and (d).   Circumstances tending to show that a prisoner is unsuitable for release include the following:

> (1) the commitment offense, where the offense was committed in an "especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6)"serious misconduct in prison or jail."

Cal. Code. Regs., tit. 15 § 2402(c).   Circumstances tending to show suitability for release include:

> (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed the crime as the result of significant stress in his life; (5) the prisoner lacks any significant history of violent crime; (6) the prisoner's present age reduces the probability of recidivism; (7) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (8) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release."

Cal. Code. Regs., tit. 15 § 2402(d).

In examining its own statutory and regulatory framework, the California Supreme Court recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board . . . that the inmate constitutes a current threat to public

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 9

safety, and not merely whether some evidence confirms the existence of certain factual findings." *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008).  The Court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." *Id.* at 1204-1205.  As long as the evidence underlying the BPH's decision has "some indicia of reliability," parole has not been arbitrarily denied. *Jancsek*, 833 F.2d at 1390.

     In this case, the BPH determined that Petitioner was unsuitable for parole finding that he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  (Ct. Rec. 8, Exh. 2 at 55).  The BPH based its decision on Petitioner's commitment offense, pattern of criminal conduct, failure to profit from society's previous attempts to correct his criminality, weak residential and employment plans for release, and lack of participation in self-help therapy programs, noting a need for NA/AA. (Ct. Rec. 8, Exh. 2 at 55-65).  After considering all reliable evidence in the record, the BPH concluded that evidence of Petitioner's positive behavior in prison did not outweigh the evidence of his unsuitability for parole.  (Ct. Rec. 8, Exh. 2 at 55-65).

     With regard to the circumstances of the commitment offense, the BPH found that the offense was carried out in an especially cruel and callous manner.  (*Id.* at 55).  Although the focus under California law

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 10

is the current dangerousness of the inmate, the gravity of the

commitment offense alone can be a sufficient basis for denying parole

where the facts are especially heinous or particularly egregious.  *In*

*re Rosenbrantz*, 29 Cal.4th 616, 682 (2002); *Sass*, 461 F.3d at 1126;

*Biggs*, 334 F.3d at 913-916; *Irons*, 505 F.3d at 852-853.[1]

Here, Petitioner confronted the victim with a loaded shotgun and

then shot at the victim without warning, initiating a shootout between

the two men.  (Ct. Rec. 8, Exh. 2 at 56).  Although petitioner heard

the victim say, "you got me, it's over," or "I give up, you got me,"

he entered the house, reloaded his shotgun, returned to the spot where

the victim was lying face down on the ground and shot the victim in

the back at point-blank range.  (*Id.*)  Based upon these facts, the BPH

reasonably concluded that the murder was carried out in an especially

cruel and callous manner.  (*Id.* at 56).  Under these circumstances,

Petitioner's commitment offense, by itself, was sufficient to deny him

parole.

Petitioner has requested that this Court take judicial notice of

a Santa Clara County Superior Court Order entered in an unrelated

habeas case because it contains statistical evidence suggesting that

the BPH regularly applies the commitment offense unsuitability factor

---

[1]In another case, *Hayward v. Marshall*, 512 F.3d 536, 546-547 (9th Cir. 2008), a panel of the Ninth Circuit determined that under the "unusual circumstances" of that case, the petitioner's commitment offense did not, by itself, constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Ninth Circuit decided to rehear the case *en banc*.  *Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel decision in *Hayward* is no longer citable precedent.

in an arbitrary manner.  (Ct. Rec. 11); *see also* Fed. R. Evid.
201(b)(2) (permitting the court to take judicial notice of a fact that
is "not subject to reasonable dispute in that it is . . . (2) capable
of accurate and ready determination by resort to sources whose
accuracy cannot reasonably be questioned.").  Because Petitioner
brings this evidence to the Court's attention as further support for
the arguments set forth in his petition, Petitioner's request for
judicial notice shall be construed as supplemental briefing in support
of his petition.  Accordingly, the Court has considered the Santa
Clara County Superior Court's Order, but finds the statistical
evidence does not alter the above conclusion that the BPH, in this
case, provided some evidence to support its finding regarding the
commitment offense.

     The BPH also relied upon Petitioner's pattern of criminal conduct
and failure to profit from society's previous attempts to correct his
criminality.  (Ct. Rec. 8, Exh. 2 at 56-57).  The applicable
guidelines direct the BPH to consider all relevant and reliable
information, including "a prisoner's past criminal history," and
"behavior before, during, and after [the base and other commitment
offenses]."  Title 15 Cal. Code Regs., § 2402(b).  As a result, the
BPH properly considered Petitioner's juvenile conviction for
burglarizing a home and his adult conviction based upon several
traffic violations, for which Petitioner received imprisonment and
probation.  (Ct. Rec. 8, Exh. 2 at 56-57).  Petitioner's prior
criminal convictions and grants of probation provide some evidence to
support the BPH's finding that Petitioner has a pattern of criminal

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 12

conduct and has failed to profit from society's previous attempts to correct his criminality.

The BPH also discussed Petitioner's residential and employment plans for release. (Ct. Rec. 8, Exh. 2 at 61-63). The BPH noted that while Petitioner had plans for employment and places to live, Petitioner was unable to provide the BPH with sufficient details regarding these areas. The BPH indicated that a more solid release plan needed to be presented to the next Board. (*Id.*)

The BPH lastly found that Petitioner lacked participation in self-help therapy programs, noting a need for NA/AA as a good safety net for Petitioner upon his release. (Ct. Rec. 8, Exh. 2 at 64). During the hearing, the BPH noted that Petitioner was in institutional remission after using drugs from age 15 to 29. However, the BPH mentioned that a psychiatric report opined that Petitioner's greatest risk factor would be a return to substance abuse. (*Id.* at 60). While the BPH did not mandate participation in NA or AA, it indicated that, given the factors of his crime, he would need NA or AA on the outside. (*Id.* at 64). Petitioner had no record of previous participation in NA or AA. Based on the foregoing, there is some evidence to support the BPH's finding that Petitioner lacked participation in self-help therapy programs.

**CONCLUSION**

Petitioner was appropriately commended by the BPH for his accomplishments in prison. Petitioner was given credit for his apprenticeship in welding, studio technician work, "exceptional" work chronos, obtaining a GED and continuing his education. That said, as

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 13

discussed above, there was still "some evidence" justifying the BPH's decision to deny parole based on Petitioner being a danger to society if released.  Accordingly, Petitioner's due process rights were not violated by the denial of parole at his September 22, 2005 hearing.

The Trinity County Superior Court's adjudication of Petitioner's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent.  It also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the Court finds that Petitioner's Petition for Writ of Habeas Corpus (**Ct. Rec. 1**) is **DENIED**.

In addition, Petitioner's "Request For This Court To Take Notice Of New Evidence In Support Of Petitioner's Claim" (**Ct. Rec. 11**) is construed as supplemental briefing in support of his petition and is terminated as a pending motion.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order, **enter judgment accordingly**, furnish copies to counsel and **Petitioner** and **CLOSE THE FILE**.

**DATED** this  2nd  day of December, 2009.

S/Fred Van Sickle
_____
Fred Van Sickle
Senior United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 14